UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLWORTH FINANCIAL LP, | No. 2:23-cv-00829-TLN-KJN |
| Plaintiff, | |
| v. | **ORDER** |
| JILL PIVATO, | |
| Defendant. | |

This matter is before the Court on Plaintiff Allworth Financial, LP's ("Plaintiff") Application for a Temporary Restraining Order ("TRO"). (ECF No. 2.) Defendant Jill Pivato ("Defendant") filed an opposition. (ECF No. 15.) Plaintiff filed a reply. (ECF No. 16.) For the reasons set forth below, the Court DENIES Plaintiff's application.

///
///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2019, Plaintiff, an SEC registered investment advisory firm, hired Defendant as a financial advisor and assigned her a group of clients to service on Plaintiff's behalf. (*Id.* at 2.) Defendant resigned on April 21, 2023. (ECF No. 1 at 2.) Plaintiff alleges that prior to Defendant's departure, Defendant downloaded and took Plaintiff's trade secret materials — including client lists, confidential client financial account material, data and records generated by Plaintiff concerning the customer base assigned by Plaintiff to Defendant, and she also has contacted Plaintiff's clients for the purpose of diverting their business to Defendant and/or Creative Planning, which is Defendant's new employer and Plaintiff's competitor. (*Id.* at 11.)

Plaintiff filed the instant action on May 3, 2023, alleging claims for: (1) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act, Cal. Civil Code § 3426; (3) breach of written contract; and (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. (*Id.* at 7–11.) Plaintiff filed the instant *ex parte* application for a TRO that same day. (ECF No. 2.) The Court set a briefing schedule, ordered Plaintiff to serve Defendant not later than May 4, 2023, and ordered Plaintiff to file a proof of service with the Court. (ECF No. 5.) Plaintiff failed to file a proof of service as ordered. Based on Plaintiff's delay, the Court extended the briefing schedule. (ECF No. 6.) The matter is now fully briefed.

## II. STANDARD OF LAW

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See Fed. R. Civ. P. 65. It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); *see also Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.").

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's

3

favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

### III. ANALYSIS

Plaintiff must make a clear showing on all four prongs of the *Winter* test to be eligible for the extraordinary remedy of a temporary restraining order. *See All. for the Wild Rockies*, 632 F.3d at 1135. Since the Court concludes Plaintiff has not made the required showing of imminent and irreparable harm in the absence of a temporary restraining order, the Court declines to address the remaining *Winter* factors.[1] *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 2:16-cv-02249-TLN-AC, 2018 WL 489102, at *2–3 (E.D. Cal. Jan. 19, 2018).

As to irreparable harm, Plaintiff argues the threat of trade secret misappropriation and of damage to customer relationships and good will are well recognized as constituting irreparable injury. (ECF No. 2-2 at 13.) Plaintiff further argues it is a SEC and FINRA regulated entity that must maintain its client data in conformity with federal and state regulatory requirements to ensure privacy, protection, and restrained use of client financial information and files. (*Id.* at 14.) In addition, Plaintiff argues it is concerned Defendant will continue to retain, use, and transmit Plaintiff's trade secrets, which may lead to loss of sales and customers that cannot be readily measured or compensated by money damages. (*Id.*) Lastly, Plaintiff argues the Court should order imaging of Defendant's electronic devices and accounts to prevent evidence destruction. (*Id.* at 14–15.)

In opposition, Defendant argues Plaintiff's assertion that it will lose sales or customers is speculative, based on the self-serving conclusions, and contradicted by Plaintiff's evidence. (ECF

---

[1] In its previous minute order, the Court expressed its concerns: (1) that this district is an improper venue; and (2) that Plaintiff is seeking a mandatory injunction, which triggers a heightened standard. (ECF No. 5.) The parties subsequently briefed the venue issue. While the Court still has doubts as to whether this is a proper venue, the Court declines to decide the venue issue at this time based on the Court's denial of Plaintiff's application for a TRO on other grounds. As to the mandatory injunction issue, Defendant argues Plaintiff is subject to a heightened standard. (ECF No. 15.) Plaintiff does not address this issue in its reply. (ECF No. 16.) Because the Court finds Plaintiff has not shown irreparable harm even under the lower standard for a prohibitory injunction, the Court need not and does not address whether a heightened standard applies.

4

No. 15 at 22–23.) Defendant also argues there is no threat of future harm because Defendant "long since destroyed all the Allworth documents and materials in her possession," she has no incentive to solicit away Defendant's clients under her compensation plan with her new employer, and her new employer has taken proactive steps to ensure that none of Plaintiff's trade secret or confidential client information was provided to it. (*Id.* at 23.) Finally, Defendant argues any alleged harm to Plaintiff is fully compensable as monetary damages. (*Id.*)

Based on the record before the Court, Plaintiff has not met its burden to show it will suffer immediate, irreparable harm in the absence of emergency relief. Plaintiff argues courts have stated that "imminent use of a trade secret constitutes irreparable harm" and "[e]vidence of threatened loss of prospective customers or good will" supports finding "the possibility of irreparable harm." (ECF No. 2-2 at 22 (quoting *Gallagher Benefits Servs., Inc. v. De La Torre*, No. C 07-5495 VRW, 2007 WL 4106821, at *5 (N.D. Cal. Nov. 16, 2007); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).) However, Plaintiff must provide evidence showing that irreparable harm is not just possible, but likely, in the absence of preliminary relief. *Winter*, 555 U.S. at 20–21; *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

In its initial application for a TRO, the only evidence Plaintiff cites to show irreparable harm is a declaration from Corey Gamble, Plaintiff's Chief Compliance Officer. (ECF No. 2-2 at 13–15 (citing ECF No. 2-4).) Gamble states Defendant misappropriated and used Plaintiff's trade secrets and confidential information to contact Plaintiff's clients and "[t]he threatened damage and the damage already suffered by Plaintiff as a result of [Defendant's] actions is irreparable." (*Id.* at ¶ 16.) Gamble further states Defendant's improper actions have "caused damage to Plaintiff's reputation, good will, and business relationships in ways that cannot be repaired through money damages alone." (*Id.*) Lastly, Gamble states Plaintiff "will continue to suffer immediate, irreparable harm if [Defendant] is not restrained." (*Id.* at ¶ 18.)

Plaintiff submits additional pieces of evidence with its reply. (ECF No. 16.) Plaintiff submits a declaration from Valerie Kraml, Plaintiff's senior counsel, stating that since Defendant's resignation and due to Defendant's ongoing solicitation of Plaintiff's client, Plaintiff

5

1   has lost at least 33 households and $40 million in assets under management to Defendant and/or
2   her new employer.  (ECF No. 16-1.)  Plaintiff also submits screenshots of text messages and a
3   voicemail transcript purporting to show that Defendant contacted Plaintiff's clients in late April.
4   (ECF Nos. 16-3, 16-4, 16-5.)  At best, those screenshots show Defendant communicated with
5   Defendant's clients in late April, which possibly led to subsequent phone conversations.
6   However, the screenshots themselves do not explicitly show Defendant solicited Plaintiff's
7   clients.  Lastly, Plaintiff submits an email from one of its clients stating Defendant spoke to her in
8   late April about leaving her employment with Plaintiff.  (ECF No. 16-6.)
9         The Court concludes Plaintiff's evidence is insufficient to show irreparable harm is likely
10  to occur in the absence of injunctive relief for two reasons.  First, Plaintiff's evidence only shows
11  past conduct that occurred over three weeks ago.  Regardless of whether Defendant harmed
12  Plaintiff in the past, Plaintiff must still show that the threat of injury in the future is "certainly
13  impending" or that it presents a "substantial risk" of recurrence for the Court to hear its claim for
14  prospective relief.  *Munns v. Kerry*, 782 F.3d 402, 411–12 (9th Cir. 2015).  For her part,
15  Defendant provided a declaration from her new employer's Chief Risk Officer describing the
16  steps the company has taken to ensure Defendant has not used Plaintiff's trade secrets or
17  confidential information in her new employment.  (ECF No. 15-2.)  Defendant also submitted her
18  own declaration stating she no longer has access to Plaintiff's information as she deleted the
19  documents contained in her email and Dropbox and destroyed all physical materials in her
20  possession.  (ECF No. 15-1.)  In addition, Defendant has indicated she will agree to abide by her
21  obligations with Plaintiff, including consenting to arbitration.  (ECF No. 15 at 26.)  The Court
22  cannot conclude that preliminary injunctive relief is warranted based on the current record
23  because there is insufficient evidence that Defendant will continue to use Plaintiff's trade secrets
24  in the future.  *See, e.g.*, *Flip Flop Shops Franchise Co., LLC v. Neb*, No. CV 16-7259-JFW (EX),
25  2016 WL 9308328, at *2 (C.D. Cal. Oct. 4, 2016) (finding that based on evidence that the
26  defendants were no longer using the plaintiff's marks, brand, or proprietary system, the plaintiffs
27  could not "demonstrate the requisite irreparable injury necessary to support the issuance of a
28  temporary restraining order or an order to show cause")).

Second, even if Defendant resumes the alleged conduct, economic injury is insufficient to constitute irreparable harm. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249–50 (9th Cir. 2013). Plaintiff argues it has lost the accounts of over 33 households and $40 million in assets under management because of Defendant's conduct. (ECF No. 16 at 6.) This argument suggests Plaintiff's damage can be quantified. While loss of goodwill may constitute irreparable harm, a plaintiff who attempts to establish irreparable harm via loss of business reputation and goodwill must proffer evidence of that loss — a district court may not base a finding of reputational harm on "platitudes rather than evidence." *Id.* As a result, evidence of reputational damage or harm to business goodwill sufficient to merit entry of preliminary relief typically incorporates information provided by, or from the perspective of, market-based sources external to the plaintiff itself. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865 (9th Cir. 2017); *DFO, LLC v. Denny Bar Co., LLC*, No. 2:18-cv-02226-JAM-KJN, 2018 WL 5880813, at *2 (E.D. Cal. Nov. 8, 2018) (holding that declaration submitted by plaintiff's employee was insufficient to establish likelihood of harm to business goodwill because it was based only on the declarant's opinion and experience regarding the relevant market, and therefore "fail[ed] to present any concrete evidence that a loss of control of [plaintiff's] business reputation has occurred or is likely to occur at all"). In the instant case, Gamble's conclusory assertion that Defendant's conduct will irreparably harm Plaintiff's goodwill and reputation, without more, is insufficient.

It is Plaintiff's burden to show that irreparable harm is not just possible, but likely, in the absence of preliminary relief. *Winter*, 555 U.S. at 20–21; *Caribbean Marine Servs. Co., Inc.*, 844 F.2d at 674. Plaintiff has failed to do so. *See BrightView Landscapes, LLC v. Stowell*, No. CV178317FMOGJSX, 2017 WL 10511569, at *3 (C.D. Cal. Dec. 11, 2017) ("Under the circumstances, the court is not persuaded that [the plaintiff] has made a 'clear showing' that the threatened harm it perceives to its goodwill and loss of customers is immediate (because it has already occurred) and irreparable (because it can be quantified)."). Accordingly, the Court DENIES Plaintiff's application for a TRO.

///

7

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Application for a TRO. (ECF No. 2.)

IT IS SO ORDERED.

**DATE: May 19, 2023**

Troy L. Nunley
United States District Judge